MARIE L. EVANS, *Widow, etc. v.* WORKMEN'S COMPENSATION COMMISSIONER *et al.*

(No. 9322)

Submitted April 21, 1942.  Decided May 5, 1942

*Riley & Riley* and *John R. Koller,* for appellant.
*Schmidt, Hugus & Laas,* for appellees.

Fox, PRESIDENT:

Paul C. Evans, an employee of the Valley Camp Coal Company, was killed in a railroad crossing accident on January 13, 1940. The accident occurred at No. 3 Mine of the Coal Company, situated between Elm Grove and Triadelphia, in Ohio County. His widow, the claimant herein, filed an application for compensation, which was denied by the Compensation Commissioner and the Compensation Appeal Board, from which actions she prosecutes this appeal.

The material facts are not in dispute. The mining plant in question, taken as a whole, is located on both sides of Little Wheeling Creek, and is also traversed by United States Route No. 40, locally known as the National Road, and by the main line of The Baltimore and Ohio Railroad Company between Wheeling and Pittsburgh, both located on the north side of Little Wheeling Creek, the railroad being nearest the creek. The tipple and other structures, directly connected with the mining operations, are located on the south side of the creek, and a spur of the railroad, which leaves the main track to the west of the mine, extends to the tipple and beyond. On the north side of the National Road are located the company offices, gasoline station, machine shop and other structures connected with the plant. A private road extends from the National Road across the railroad track, and over Little Wheeling Creek to the tipple and surrounding structures, and is the only means of vehicular access to the mine proper. A footpath along the railroad spur is used by pedestrians, and the mine is reached by pedestrians from other directions from the south. Pedestrians also use the private road. These conditions existed at the time of the accident. At that time there was considerable space around the company store, gasoline station and other structures on the north side of the National Road, and the supply house on the south side thereof, which employees used to park automobiles, with the acquiescence of the employer. There were also spaces along the private road near the fan house, hoist house, wash house and blacksmith shop near the tipple, which were used permissibly by employees to park automobiles. Apparently there was more space on the north side of the National Road, but one witness states that he had observed as many as fifteen automobiles parked at the different spaces at and around the mine proper. Evans, an electrician at the mine, was accustomed to drive his automobile from the National Road across the railroad tracks and creek over the private road, and to park the same near the mine. On the day of his death he had

followed this practice, and on completing his work for the day started home. At the crossing on the main line of the railroad, he was struck by a freight train and almost instantly killed. The sole question presented is whether the decedent at the time of his death was within the zone of his employment.

We have held that the term "zone of employment" implies reasonable proximity to the place of employment. *Carper v. Compensation Commissioner,* 121 W. Va. 1, 1 S. E. 2d 165, and that principle is upheld by other cases therein cited. In that case the injury occurred while the employee was traveling a road near his residence about one-third of a mile away from the mining plant, and we denied compensation for the reason that, while the injury was sustained on company property, there was no connection between that location and the plant equipment. Here we have a different situation. The plant equipment, we think, includes not only the tipple and the buildings surrounding it, but stores and machine shops used directly in connection with the operation of the mine, provided they are located within reasonable proximity to the mine itself. We think it also includes a private road of the mine owner, leading from a public highway into the mine proper. It appears clear that in the instant case, while the private road in question was used primarily for the purpose of taking supplies to the mine, and of removing stone and other refuse therefrom, it was also contemplated that it should be used by employees in going to and from their work. Space was provided, and its use permitted, for parking automobiles by employees around the store and gasoline station on the north of the National Road, and to the south thereof, but north of the railroad and creek. That in itself indicates that employees, after parking their cars, would be expected to use the private road as pedestrians to reach the mine, as the natural and convenient way to reach the mine. So there appears to be no question that the private road was used by employees. It is equally clear that the use of the road was permitted by

employees choosing to drive their automobiles over the private road to the parking spaces at and around the mine. The fact that "No Parking" signs were placed at some points along the road, and at one point a chain guarded the private road, does not overcome the clearly proven fact that notwithstanding these signs and guard, available spaces at and around the mine were used by employees to park their cars, without any objection on the part of the company. In these circumstances, we think the claimant has made a clear case for compensation, for the reason that, at the time of the death of Evans, he was within the zone of his employment, and that the injury resulting in his death was sustained in the course of and resulting from his employment. The fact that the accident occurred on the property of the railroad company does not affect the situation. Presumably, the Coal Company had the right to cross the railroad track with its private road. We think it clear that a pedestrian who parked his car at any of the spaces provided on the north side of Little Wheeling Creek, and who used this road in going to and from his work would, if injured, be entitled to compensation; and we are unable to see why an employee using an automobile in the manner in which employees were accustomed to use the same at and around this mine, would not likewise be entitled to compensation in case of injury, and in case of death compensation to his widow or dependents.

The question presented here is one of law upon clearly proven facts, and, therefore, we are not overruling the Commissioner and the Appeal Board on a question of fact. We would only take such action in a case where we thought there had been a clear error in a factual finding. Here we think both the Commissioner and the Appeal Board misapplied the law.

The case will, therefore, be reversed and remanded to the Compensation Commissioner, with direction to enter an order granting compensation to the claimant.

*Reversed and remanded.*